SMITH et al. v. ARROW DRILLING CO. et al.

No. 30543.  Oct. 6, 1942.

Rehearing Denied Oct. 27, 1942.

*130 P. 2d 95.*

A. L. Commons, Bryce Ballinger, and Dyke Ballinger, all of Miami, for plaintiffs in error.

John E. Curran and Morris L. Bradford, both of Tulsa, and Frank W. Nesbitt, of Miami, for defendants in error.

GIBSON, J. This action was commenced in district court by defendants in error against plaintiffs in error to recover a certain sum allegedly due under a written contract for the drilling of an oil and gas well. Defendants below filed their answer and cross-petition charging that the well after completion as a producer was destroyed as

382

a result of plaintiffs' negligence, and sought judgment as on counterclaim for the resulting damages. Judgment was rendered on the verdict for plaintiffs, and defendants appeal.

Defendants were the owners of an oil and gas leasehold on which was located a well of a depth of approximately 2,000 feet. They entered into a written contract with plaintiffs wherein the latter agreed, in consideration of an assignment of one-half interest in the lease, to drill the well to the Hunton lime to be encountered at approximately 4,100 feet. It was agreed that plaintiffs bear all expense incident to the undertaking, and that upon reaching said lime defendants would pay to plaintiffs the sum of $5,000, and further, if said lime was found to be of a quality indicating commercial productivity, the defendants would then pay to plaintiffs one-half the expense incurred by them in completing the well to the lime. It was further agreed that if the well was completed as a commercial producer, it should be operated by plaintiffs under a suitable contract to be entered into, and that the costs of operation would be borne equally by the parties.

The contract was carried out by both parties to the point where the Hunton lime was reached and the $5,000 paid to the plaintiffs. The well proved to be a commercial producer, and its production was prorated by state authorities. Subsequently said well was shut down on order of said authorities for overproduction to await further order.

After 30 days the well was reopened and was found to be making salt water along with the oil. Thereupon plaintiffs set a string of two-inch tubing in the well to facilitate production, but the operation was unsuccessful. They then allowed the well to produce through the annular space between the tubing and the casing.

In an attempt to improve the method of production plaintiffs removed the derrick theretofore used in drilling and replaced it with a smaller one, whereupon they ran a cement plug to shut off production in order to perforate the casing at a higher level in the formation and thus avoid the intrusion of salt water. This did not improve the situation. Salt water continued to break into the well. Plaintiffs then undertook to shut off the water by injecting a large quantity of wet cement through the two-inch production pipe by means of air pressure. As a result of the air pressure the tubing was blown from the well, but immediately fell back in. An attempt was made to pull the tubing, and as a result the derrick collapsed, and the undertaking failed. Plaintiffs then proceeded to whipstock the hole but failed to obtain production, and the well no longer produced. Defendants refused to pay plaintiffs for any portion of the drilling and operating expenses, and this action resulted.

In their answer and cross-petition defendants alleged that the tubing when first placed in the well had become plugged as a result of improper methods negligently employed by plaintiffs in placing the same in the well; that they requested plaintiffs to pull the tubing and reset it but plaintiffs refused to comply, and thereafter, over defendants' protest, continued to allow the well to produce through the space between the tubing and the casing; that such method was improper and negligent in that the salt water was in no way controlled thereby, but was permitted to encroach the more upon the oil, eventually resulting in the total destruction of the well; that said acts constituted negligence on plaintiffs' part and were the principal factors leading to the destruction of the well.

Defendants further alleged that plaintiffs were guilty of negligence in removing the larger derrick and replacing it with the smaller one for the reason that the latter was unsuited by reason of insufficient strength to the tasks necessary to the protection of the well from salt water; that said derrick was improperly set on the foundation in that it was wholly out of plumb with the well, and as a result the same collapsed as aforesaid when the attempt was made

to pull the tubing; that such procedure was over defendants' protest, and was wholly out of line with the usual custom and practice prevailing in the Mid-Continent field.

It was further alleged that plaintiffs were guilty of negligence in applying too much air pressure in running the cement into the well through the two-inch tubing as mentioned above; that the tubing and equipment were inadequate to withstand more than 1,800 pounds to the square inch, but plaintiffs, over defendants' protest, increased the pressure to 2,100 pounds, as a result of which the tubing was blown from the well.

Plaintiffs were further charged with negligence in not proceeding immediately to pull the tubing after it fell back into the well in that the delay allowed it to become imbedded in the cement, which was then green but later became set, making the task all the more hazardous; that such delay was contrary to customary practice in the oil field.

It is further alleged that the well was destroyed as a proximate result of plaintiffs' improper and negligent operations as aforesaid; that it would have been a profitable producer had it been properly handled, and that defendants' interest therein would have been easily worth the sum of $60,000. Judgment was sought in that amount.

The first contention is that the trial court erred in overruling defendants' motion to require plaintiffs to make their petition more definite and certain.

Plaintiffs pleaded the written contract and fulfillment thereof on their part, and alleged that they submitted monthly statements to defendants throughout operations reflecting their pro rata share of the expenses, a list of which was attached to the petition, and that the defendants were indebted to them under the contract for the sum of the said monthly statements, or $20,717.87.

Defendants say there is nothing in the statement to inform them as to what they are being charged with, whether for labor or material, or as to who furnished the same. They insist that the account as attached to the petition was wholly insufficient to apprise them of the real matters which they were required to defend against.

The statement attached to the petition consisted only of a column of dates with a sum set opposite each date. There was no itemized statement of what the sums represented. This, say the defendants, was not sufficient as against their motion and that the overruling of the same was prejudicial to their rights, and an abuse of the court's discretion. Swarts v. State, 70 Okla. 205, 174 P. 255. That action was against a court clerk and his surety to recover alleged shortages in his official accounts. The trial court overruled the separate motions of defendants to require plaintiff to set out specifically the different items and their source making up the alleged shortage. Judgment against defendants was reversed on the ground that the trial court erred in overruling the motions. This court said that the defendant in any case had the right to have a cause of action against him set forth with reasonable particularity, and the court was apparently of the opinion that the defendants' rights in that case were unduly prejudiced by the action of the trial court.

But it does not appear that the overruling of the motion in this case prejudiced the rights of the defendants to any appreciable extent. The general rule relating to the trial court's action on such motions is stated in Schaff v. Coyle, 121 Okla. 228, 249 P. 947, as follows:

"A motion to make more definite and certain is addressed largely to the discretion of the court; and its ruling thereon will not be reversed, except for the abuse of such discretion that results prejudicially to the complaining party. And where the facts sought by such motion are within the knowledge and possession of the movant, it is not error to overrule the same."

Here it appears that defendants throughout the entire two-year period

of drilling operations were furnished with statements every 30 days, or oftener, showing the amount charged to them for the particular period of time. They apparently made little or no effort to ascertain the nature of the items those sums represented, but waited until the action was commenced to object to the form of the statements. We think that these circumstances left defendants in no better position than that occupied by one who has knowledge and possession of the facts sought to be revealed by his motion to make more definite and certain.

Courts are charged with the duty to disregard any error or defect in pleadings which do not affect substantial rights of the adverse party. 12 O. S. 1941 § 78. The action of the trial court in overruling the motion in the instant case resulted in the infringement of no substantial rights of the defendants. It acted wholly within its discretionary powers.

Defendants charge error in admitting certain alleged incompetent evidence.

The first objection is directed at an exhibit which consisted of an itemized statement of expenditures made by plaintiffs. It was objected to as being a carbon copy and not the best evidence. However, the witness testified that the instrument offered was a carbon copy of an original theretofore mailed to defendants. In such circumstances the copy is admissible. The witness through whom the statement was offered showed himself competent to identify the statement as correct. He said he did not keep the accounts personally but that they were prepared on machines and always came through his hands. He was speaking of the invoices. See Parmenter v. Douglass Tank Co., 115 Okla. 193, 241 P. 471, wherein the court considered as competent to testify concerning the correctness of an account or statement of this character one who was office man of the plaintiff and acquainted with the work and materials furnished, familiar with the invoices, and who mailed statements to customers. The witness here was similarly qualified. Therefore, we cannot agree with defendants' contention that the witness was not qualified to testify concerning the itemized statement.

Defendants charge error in the admission of certain other evidence, some of which pertained to payment by plaintiffs of all the expense incurred in drilling operations, and some relating to the failure of the parties to enter into the operating agreement mentioned in the written contract here sued upon. But defendants fail to support their contention with authorities, and fail to indicate wherein such evidence, if erroneous, in any way prejudiced their legal rights. We find in this assignment nothing to warrant reversal.

It is also contended that the trial court erred in refusing certain evidence offered by defendants.

The evidence in question pertained to the alleged negligent manner in which plaintiffs conducted the drilling operations. Each of the defendants took the stand to testify on that issue and attempted to offer their opinion as experts or as being qualified by special knowledge or experience in certain methods employed or not employed by plaintiffs. The trial court sustained an objection to the evidence.

The action of the trial court in this respect lay largely within its discretion. Texas Co. v. Alred, 167 Okla. 128, 28 P. 2d 556; Magnolia Petroleum Co. v. Norton, 189 Okla. 252, 116 P. 2d 893. The rule is stated in the latter case as follows:

"The question of the qualification of an expert is largely in the discretion of the trial court, and the weight of his testimony is for the jury, and in the absence of an abuse of that discretion, resulting in prejudicial error, this court will not reverse the case for a new trial on such ground."

We have examined the evidence relating to the qualifications of the witnesses, and have found no indication of an abuse of discretion in refusing to receive their opinions.

Next, it is urged that the trial court erred in overruling defendants' demurrer to plaintiffs' evidence in chief, and in overruling their motion to dismiss.

This contention is founded entirely on plaintiffs' alleged failure to plead and prove payment of the intangible personal property tax on the claim sued upon, as required by 68 O. S. 1941 § 1515. Under that section an action for the collection of certain kinds of obligations as therein defined is subject to dismissal by the court unless the plaintiff plead and prove that the obligation sued on has been assessed for taxation and the taxes paid.

Assuming, however, that the obligation here sued on falls within the class of property defined in the statute, we fail to find merit in the assertion that the court 'erred in not dismissing the action. The suit was commenced prior to the enactment of section 1515, but the trial took place subsequent to the enactment. Plaintiffs asked and were granted leave to amend their petition to show assessment and payment of all the taxes due on the property under the statute. Payment was proved. There is no law denying that right, and we find no fault with the procedure.

Defendants object to an instruction pertaining to the issue of negligence on the part of plaintiffs as charged in the cross-petition.

The trial court, when instructing on that issue, properly defined actionable negligence and proximate cause, and placed the burden on defendants to prove the allegations of their cross-petition, stating further that negligence is never presumed in that the law presumes that all persons use ordinary care. The court then instructed that the mere fact that an accident occurred and that the defendants sustained injury thereby, does not raise a presumption of negligence, and no one is liable for damages resulting from an unavoidable accident.

The latter instruction is the object of defendants' criticism. They say it would exonerate plaintiffs if the damage to the well was occasioned by accident, and that it was outside the issues and calculated to mislead the jury.

We see no prejudicial error in the instruction. It states the law, and amounts to no more than an enlargement upon the prior statement in the instructions to the effect that negligence is never presumed, and that the law presumes that all persons use ordinary care. 45 C. J. 1148 § 739.

"Neither party to an unavoidable accident is responsible to the other for damages sustained thereby." Wilson v. Roach, 101 Okla. 30, 222 P. 1000.

The instruction exonerated plaintiffs from unavoidable accident, but not from any accident proximately resulting from their negligence. The instructions as a whole on the issue were not misleading, but clearly charged the jury to find for defendants on their cross-petition if plaintiffs were guilty of negligence as alleged.

The judgment is affirmed.

RILEY, OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and CORN, V. C. J., absent.